# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN, <br><br> Plaintiffs, <br> v. <br><br> QUANTARIUM ALLIANCE, LLC, QUANTARIUM GROUP, LLC, RICHARD ROES 1-10, *fictitious names of unknown individuals*, and ABC COMPANIES 1-10, *fictitious names of unknown entities*, <br><br> Defendants. | Case No.: 1:24-cv-04098-HB |

## REPLY BRIEF IN FURTHER SUPPORT OF
## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................1

FACTUAL BACKGROUND ..............................................................................2

LEGAL ARGUMENT .........................................................................................4

     A.    Plaintiffs Fail to Demonstrate that Quantarium Purposefully
           Availed Itself of the State of New Jersey ..............................................4

     B.    Plaintiffs Fail to Demonstrate A Basis for Specific Jurisdiction
           Under the Calder Effects Test ..............................................................7

          i.     Daniel's Law is Not an Intentional Tort ....................................8

          ii.    Plaintiffs Fail To Establish That Quantarium "Expressly
              Aimed" Any Alleged Tortious Conduct at New Jersey............11

CONCLUSION ..................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Atlas Data Priv. Corp. v. We Inform, LLC*,
  758 F. Supp. 3d 322 (D.N.J. 2024) .................................................................8

*Atlas Data Privacy Corp., et al. v. GoHunt, LLC, et al.*,
  Case No. 1:24-cv-04380-HB .......................................................................1

*Atlas Data Privacy Corp. v. LexisNexis Risk*,
  BER-L-000875-24 (Law Div. June 6, 2025) ....................................................14

*Blazovic v. Andrich*,
  124 N.J. 90 (1991) .....................................................................................9

*Briskin v. Shopify, Inc.*,
  135 F.4th 739 (9th Cir. 2025) .....................................................................13

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)..............................................................................7, 15

*Calder v. Jones*,
  465 U.S. 783 (1984)...................................................................................12

*Click Go and Buy Inc. v. IT Assets, Inc.*,
  2024 WL 5252474 (D.N.J. Dec. 31, 2024).......................................................13

*Fidrych v. Marriott Int'l, Inc.*,
  952 F.3d 124 (4th Cir. 2020) .......................................................................5

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
  592 U.S. 351 (2021).....................................................................................4

*Goldfarb v. Kalodimos*,
  539 F. Supp. 3d (E.D. Pa. 2021) ...................................................................12

*Hasson v. FullStory, Inc.*,
  114 F.4th 181 (3d Cir. 2024) ..............................................................*passim*

*Helicopteros Nacionales De Colombia v. Hall*,
  466 U.S. 408 (1984)...................................................................................12

*Hepp v. Facebook,*
14 F.4th 204 (3d Cir. 2021) ................................................................................4

*Ingrao v. AddShoppers, Inc.,*
2024 WL 4892514 (E.D. Pa. Nov. 25, 2024) .....................................................13

*Johnson v. Griffin,*
85 F.4th 429 (6th Cir. 2023) ..............................................................................12

*Kloth v. S. Christian Univ.,*
320 F. App'x 113 (3d Cir. 2008) ...........................................................................5

*LaSala v. Marfin Popular Bank Public Co., Ltd.,*
410 Fed. Appx. 474 (3d Cir. 2011) ................................................................6, 15

*M.H. on behalf of C.H. v. Omegle.com LLC,*
2021 WL 1050234 (D.N.J. Mar. 19, 2021) ..........................................................5

*Marten v. Godwin,*
499 F.3d 290 (3d Cir. 2007) ............................................................................8, 12

*Monturi v. Englewood Hosp.,*
246 N.J. Super. 547 (App. Div. 1991) ................................................................10

*Perna v. Pirozzi,*
92 N.J. 446 (1983) ..............................................................................................10

*Pinninti v. NRI Med. Coll.,*
2010 WL 2483992 (D.N.J. Jun. 4, 2010) ............................................................14

*Remick v. Manfredy,*
238 F.3d 248 (3d Cir. 2001) .................................................................................7

*Rhodes v. Azeff,*
2025 WL 327297 (W.D. Pa. Jan. 29, 2025) .......................................................13

*Rickman v. BMW of N. Am. LLC,*
538 F. Supp. 3d 429 (D.N.J. 2021) ................................................................6, 11

*Rockwood Select Asset Fund XI v. Devine, Millimet & Branch,*
750 F.3d 1178 (10th Cir. 2014) ............................................................................9

*Rodi v. S. New Eng. Sch. of Law*,
  255 F. Supp. 2d 346 (D.N.J. 2003) ........................................................................14

*Tocci v. Antioch Univ.*,
  2007 WL 2362592 (D.N.J. Aug. 15, 2007) ........................................................14

*Walden v. Fiore*,
  571 U.S. 277 (2014) ...........................................................................................9, 14

*Wolstenholme v. Bartels*,
  511 F. App'x 215 (3d Cir. 2013) ...........................................................................12

**Other Authorities**

Black's Law Dictionary, *Intentional Tort* (12th ed. 2024) .......................................8

Restatement (Second) of Torts § 8A (1965) .............................................................9

Defendant Quantarium Alliance, LLC and Quantarium Group, LLC (collectively "Quantarium" or "Defendants") respectfully submits this reply brief in further support of its motion to dismiss for lack of personal jurisdiction (ECF No. 41) (the "Motion").[1]

## INTRODUCTION

As set forth in the Motion, and despite the limited jurisdictional discovery conducted to date and contrary to the arguments raised in Plaintiffs' Opposition to the Motion (ECF No. 89, the "Opposition"), there is no basis for this court to exercise personal jurisdiction over Quantarium in New Jersey, whether general or specific. In their Opposition, Plaintiffs rely on the *Calder* effects test and argue that the mere possession of New Jersey data in its database and Quantarium's receipt of Plaintiffs' purported opt-out requests pursuant to Daniel's Law satisfies the *Calder* test and demonstrates a basis for specific jurisdiction. *See* Opposition at pp. 43-46. Plaintiffs also argue that jurisdiction is appropriate under the traditional purposeful availment test, claiming that earning revenue from New Jersey-based consumers and utilizing a data broker that is registered to do business in New Jersey satisfies the test. *See id* at pp. 46-47.

---

[1] As set forth in Quantarium's Supplemental Memorandum of Law in Support of the Consolidated Motion to Dismiss Plaintiffs' Complaints for Lack of Personal Jurisdiction (ECF No. 41), Quantarium joins the Consolidated Motion to Dismiss and incorporates by reference the arguments raised therein. *See Atlas Data Privacy Corp., et al. v. GoHunt, LLC, et al.*, Case No. 1:24-cv-04380-HB, ECF No. 42.

Plaintiffs' arguments are unavailing, and their attempts to portray Quantarium's conduct and limited interactions, if any, with New Jersey and its residents misstate the record. For the reasons set forth in the Motion and more fully herein, it is clear that (1) Quantarium has not purposefully availed itself of New Jersey in any meaningful way; and (2) Plaintiffs fail to allege or demonstrate intentional, targeted tortious conduct required to satisfy the *Calder* effects test. Thus, this Court lacks personal jurisdiction, and the claims against Quantarium must be dismissed.

## FACTUAL BACKGROUND

In the interests of brevity and judicial economy, Quantarium respectfully directs this Court to the "Factual Background" Section of its Motion which sets forth the facts which demonstrate a lack of personal jurisdiction over Quantarium. Plaintiffs' Opposition also self-servingly cherry picks and misstates several points of testimony raised in Quantarium's corporate witness deposition. Both Quantarium entities are limited liability companies organized under the laws of the State of Delaware with their principal place of business (and sole offices) in Washington. *See* Exhibit A at 18:19-24, 19:9-25.[2] Quantarium's collective products provide property insights for over 158 million U.S. properties. *Id.* at 28:14-25.

---

[2] Annexed hereto as **Exhibit "A"** is a full and complete copy of Quantarium's corporate witness' deposition transcript, in contrast to the excerpts provided by Plaintiffs in their Opposition.

Black Knight is simply one of Quantarium's data providers as part of the collective products it provides. *See* Exhibit A at 29:1-2, 31:22-32:3 (Multiple Listing Service/active market data, appraisers or property inspectors); 33:1-15 (same); 33:18-34:1 (Constellation, Redistribute); 36:23-37:8 (public records, First American). Quantarium's proprietary data, which is housed in the "data lake" referred to in Plaintiffs' Opposition, consists of home estimate values and market/data analytics that are of common interest to lenders and are derived from public records data. *Id.* at 38:9-39:5, 49:12-50:3. Analyzing this proprietary data on a specific region, state or city basis is not common for Quantarium's business. *Id.* at 39:16-40:25. Quantarium licenses its tools for use by appraisers to companies located in Arizona and Illinois, and provides its proprietary data analytics to lenders based in Ohio, Georgia, Arizona and California (not New Jersey). *Id.* at 36:5-13, 41:6-18.

When Quantarium produces property values, it does so without knowledge about the occupants in the property, as the primary focus is the location of the property. *See* Exhibit A at 45:24-46:5, 62:16-65:10, 87:25-88:16. Quantarium's revenue for 2024 for customers with a business address in New Jersey was $14,024.96. *Id.* at 65:25-66:9. Quantarium does ***not*** track data based on revenue derived from a property valuation for properties located in New Jersey. *Id.* at 66:10-17. For the reasons set forth more fully below, Quantarium's nationwide property

3

valuation services are untethered to New Jersey and, contrary to Plaintiffs' arguments, do not provide a basis for personal jurisdiction under the purposeful availment test or the *Calder* effects test.

## **LEGAL ARGUMENT**

### A.  **Plaintiffs Fail to Demonstrate that Quantarium Purposefully Availed Itself of the State of New Jersey**

Plaintiffs' Opposition does nothing to address Quantarium's argument that it has not purposefully availed itself of New Jersey.  Specific jurisdiction exists only where a defendant purposefully directs its activities at the forum and the alleged injuries "arise out of or relate to" those activities. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021).  In order to establish personal jurisdiction under the purposeful availment test, the relevant question is whether Defendants purposely availed themselves of the privilege of conducting activities within New Jersey and, specifically, whether Defendants have "minimum contacts" with New Jersey to show that Defendants "took a deliberate act reaching out to do business" in New Jersey and that "give[s] rise to—or relate[s] to—[Plaintiffs'] claims." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024); *see also Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021) (internal quotations omitted).

In their Opposition, Plaintiffs claim that Quantarium maintains New Jersey data, earns revenue from New Jersey customers, identifies those customers through billing audits, and attributes revenue specific to New Jersey, which satisfies the

purposeful availment test. *See* Opposition at pp. 46-47. As a matter of law, providing information about New Jersey properties among those of a hundred million properties around the country does not constitute "deliberate targeting" of the forum. *See*, *e.g.*, *M.H. on behalf of C.H. v. Omegle.com LLC*, 2021 WL 1050234, at *3 (D.N.J. Mar. 19, 2021) (finding that there was no indication of purposeful direction towards New Jersey by a website that is generally accessible and looks and operates the same for users across the world); *Kloth v. S. Christian Univ.*, 320 F. App'x 113, 116 (3d Cir. 2008) (finding that foreseeability that users from a forum state would access the website is insufficient to establish purposeful availment of the forum state).[3]

Plaintiffs also grossly misstate Quantarium's business and the figures that it provided as part of its responses to jurisdictional discovery in this action. Contrary to Plaintiffs' arguments, analyzing property data based on a specific region, state or city basis is not common for Quantarium's business. *See* Exhibit A at 39:16-40:25. The fact that Quantarium provides property analytics of properties located in New Jersey, as well as every state in the country, does nothing to support the exercise of personal jurisdiction under the purposeful availment test. An encyclopedia company

---

[3] *See also Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 141–43 (4th Cir. 2020) (finding no purposeful availment where hotel website included a dropdown with South Carolina (and every other state), as it "confirms that the website was accessible to all but targeted at no one in particular").

could have several pages with information about Hawaii, but this would not indicate deliberate targeting of Hawaii. In the same way, the fact that Quantarium maintains property valuation information about properties located across the country, including New Jersey, does indicate deliberate targeting of New Jersey. Moreover, the fact that Quantarium provided revenue information for customers with a business address in New Jersey *for purposes of responding to Plaintiffs' discovery requests* does nothing to support the exercise of jurisdiction. *See* Exhibit A at 65:25-66:9. Indeed, Quantarium does *not* track data based on revenue derived from a property valuation for properties located in New Jersey. *Id.* at 66:10-17.

Plaintiffs further argue that Quantarium's reliance on Black Knight, who is registered to do business in New Jersey, also satisfies the purposeful availment test. *See* Opposition at p. 47. It is a basic premise that "general efforts to target a U.S. market do not suffice to demonstrate deliberate targeting of New Jersey in particular." *Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 439 (D.N.J. 2021). And, similar to the argument set forth above, the mere sourcing of *some* of Quantarium's nationwide data from an entity that is *registered to do* business in New Jersey is insufficient to establish that Quantarium "deliberately targeted" New Jersey as a forum state. *See LaSala v. Marfin Popular Bank Public Co., Ltd.*, 410 Fed. Appx. 474, 477 (3d Cir. 2011) ("In regard to the purposeful availment theory, the Trustees point to no facts indicating that Laiki directed any conduct toward New Jersey or

6

undertook any continuing obligations with relation to a New Jersey party. This is true despite the fact that Laiki was involved in a banking relationship with a New Jersey corporation.") (citations omitted); *Burger King Corp. v. Rudzweicz*, 471 U.S. 462, 478-79 (1985) (stating that the existence of a contractual relationship with forum-based party is insufficient to establish personal jurisdiction automatically, and requiring that courts consider, instead, factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing").

In sum, the record before the Court establishes that personal jurisdiction under the traditional purposeful availment test over Quantarium is improper, as there is no evidence of New Jersey-specific contracts, advertisements, or any appeals to New Jersey residents. As such, Quantarium's Motion should be granted.

## B.    Plaintiffs Fail to Demonstrate A Basis for Specific Jurisdiction Under the *Calder* Effects Test

Plaintiffs equally fail to establish a basis for specific jurisdiction under the *Calder* effects test. The *Calder* effects test is an alternative basis for personal jurisdiction in cases involving intentional torts. It "requires a plaintiff to plead facts establishing that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum." *Hasson*, 114 F.4th at 187 (citing *Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001)). "The effects test prevents a defendant from being

haled into a jurisdiction . . . if the defendant did not expressly aim *its conduct* at the state." *Id.* at 191 (citing *Marten v. Godwin*, 499 F.3d 290, 298 (3d Cir. 2007)).  Here, Plaintiffs argument fails because: (1) Daniel's Law is not an intentional tort, such that the *Calder* effects test does not apply; and (2) even if the *Calder* effects test applied, Plaintiffs fail to establish that Quantarium "expressly aimed" any alleged tortious conduct at New Jersey.

### i.    Daniel's Law is Not an Intentional Tort

Because Quantarium is not subject to specific personal jurisdiction based on the traditional purposeful availment test, Plaintiffs are trying to transform a purported negligence case into an intentional tort case, so they can argue the *Calder* effects test applies.  But this is contrary to how Plaintiffs pled their claim against Quantarium and how the Court previously interpreted Daniel's Law.  *See Atlas Data Priv. Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322, 340-41 (D.N.J. 2024) (Daniel's Law "must be read" to impose a negligence standard to avoid "absurd results" and "constitutional repugnancy.").

Daniel's Law is not a "tort," much less an "intentional tort."  *See* Black's Law Dictionary, *Intentional Tort* (12th ed. 2024) (an intentional tort is "[a] tort committed by someone acting with general or specific intent.  Examples include battery, false imprisonment").  Plaintiffs' theory is belied by established New Jersey precedent and common sense.  Under New Jersey law, an intentional tort requires

intent to harm, *i.e.*, "knowingly or purposefully engaging in conduct 'substantially certain' to result in injury to another." *See Blazovic v. Andrich*, 124 N.J. 90, 107 (1991) (quoting *Restatement (Second) of Torts* § 8A comment b (1965)).  Plaintiffs try to transform a violation of Daniel's Law into an intentional tort by arguing that "Daniel's Law permits liability where the inclusion of protected information results from negligence, but the tort remains intentional because the act of disclosure itself is deliberate." *See* Opposition at p. 6.  Plaintiffs argue that a violation of Daniel's Law is an intentional tort simply because a defendant allegedly published information it was legally permitted to publish before any takedown request was submitted.  This purported definition of "intentional tort" is in clear contravention of established New Jersey precedent. *See Blazovic*, 124 N.J. at 107.

Plaintiffs' Complaint does not identify any "intentional" wrongdoing, nor does it mention the "effects test" at all.  Indeed, the Complaint does not even once use the words "intentional" or "intentionally," and there is no allegation that Quantarium intended to violate Daniel's Law, intended to harm anyone, or intentionally disclosed someone's information knowing that they were substantially certain to be harmed—nor could it.  As such, Plaintiffs' reliance on the "effects test" should be rejected. *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 290 (2014) (under the "effects test," explaining that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but *whether the defendant's conduct*

9

*connects him to the forum* in a meaningful way") (emphasis added); *Rockwood Select Asset Fund XI v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014) ("*Walden* teaches that personal jurisdiction cannot be based on interaction with a plaintiff known to bear a strong connection to the forum state.").

Plaintiffs hang their claim on the New Jersey Supreme Court's findings in *Monturi v. Englewood Hosp.*, which stated that "[n]o 'malice' or intent to injure … is required to establish battery." 246 N.J. Super. 547, 552 (App. Div. 1991). However, the *Monturi* court made clear that "ghost surgery" battery is intentional because it involves a wrongful act (operating without the patient's consent), not merely because the doctor intentionally performed surgery. *Id.* at 552 (quoting *Perna v. Pirozzi*, 92 N.J. 446, 457 (1983)). Plaintiffs here, by contrast, argue that a violation of Daniel's Law is an intentional tort simply because a hypothetical act of disclosure was intentional, even if it was done prior to a takedown request or without any knowledge that a takedown request was made. That theory would erase any distinction between negligence and intentional torts, contradicting New Jersey law and common sense.[4] Because the *Calder* effects test does not apply here, any attempt to establish personal jurisdiction predicated on same must fail.

---

[4] Negligence commonly involves intentional conduct such as deciding to operate a motor vehicle, but that does not transform a negligence claim into an intentional tort. If it did, every motor vehicle negligence case would qualify as an intentional tort simply because driving is a voluntary act, and therefore every negligence claim could invoke the *Calder* effects test.

### ii. Plaintiffs Fail To Establish That Quantarium "Expressly Aimed" Any Alleged Tortious Conduct at New Jersey

Even if the *Calder* effects test somehow applied in this case, Plaintiffs have provided no evidence that Quantarium expressly aimed its tortious conduct at New Jersey. Failure to establish express aiming of tortious conduct is a complete bar to jurisdiction under the *Calder* test. *Hasson*, 114 F.4th at 187. Here, Plaintiffs have failed to plead or prove any expressly aimed conduct by Quantarium, and certainly no expressly aimed *tortious* conduct.

Plaintiffs state that "[Quantarium] disclos[ed] or continu[ed] to disclose protected information that they knew concerned New Jersey residents," Opposition at p. 11, as evidence of expressly aimed conduct. However, as explained *supra*, Quantarium maintains property information pertaining to located in every state in the U.S, and "general efforts to target a U.S. market do not suffice to demonstrate deliberate targeting of New Jersey in particular." *Rickman*, 538 F. Supp. 3d at 439.

Even assuming such conduct is expressly aimed at New Jersey, merely collecting or disclosing publicly available data is not *tortious* conduct and therefore does not provide personal jurisdiction under the *Calder* effects test. A defendant's mere "knowledge" that a plaintiff in the forum might be harmed does not show that its actions "expressly targeted" the forum for purposes of the "effects test," or any other prerequisite to establishing personal jurisdiction. *Hasson*, 114 F.4th at 196 (3d Cir. 2024) ("We have **rejected the argument that the 'expressly aiming'**

**requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state**." (emphasis added)) (internal quotations omitted); *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 411 n.9 (1984) (to establish specific jurisdiction, plaintiff must show the action is "arising out of or related to the defendant's contacts with the forum"); *Wolstenholme v. Bartels*, 511 F. App'x 215, 219 (3d Cir. 2013) (quoting *Marten*, 499 F.3d at 297 ("the effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state.").

Plaintiffs conflate this case's circumstance with instances cases where the defendants intentionally disseminated *harmful* information about forum residents with the conduct at issue.  In *Goldfarb v. Kalodimos*, 539 F. Supp. 3d, 435, 453-54 (E.D. Pa. 2021), *Johnson v. Griffin*, 85 F.4th 429, 433 (6th Cir. 2023) and *Calder v. Jones*, 465 U.S. 783, 784-85 (1984), the out-of-state defendants were alleged to have intentionally disseminated harmful information regarding the in-state plaintiff.  Here, by contrast, Plaintiffs' only accusation of allegedly tortious conduct is their allegation that Quantarium was liable for allegedly failing to remove information within ten (10) days of a Daniel's Law request.  Because Plaintiffs have admitted that such conduct need not be intentional to constitute a violation of Daniel's Law,

Opposition at p. 6, such conduct cannot satisfy the express aiming prong of the *Calder* effects test.

To find "express aiming" in this case, Plaintiffs rely on a Ninth Circuit ruling on *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025), where the Ninth Circuit treated the *Calder* "express aiming" requirement as satisfied merely because a defendant knew its conduct may affect forum residents. *Id.* at 757. However, the *Briskin* rule directly contradicts this Circuit's holding in *Hasson* that such knowledge is necessary but not sufficient to establish specific jurisdiction under the *Calder* effects test. 114 F.4th at 196. In the wake of *Hasson*, several district courts have applied the effects test in circumstances relevant here. *See Click Go and Buy Inc. v. IT Assets, Inc.*, 2024 WL 5252474, at *8 (D.N.J. Dec. 31, 2024) (a defendant is not subject to personal jurisdiction in the plaintiff's home state "as soon as the defendant learns what that state is."; "[t]he mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy *Calder*."); *Rhodes v. Azeff*, 2025 WL 327297, at *5 (W.D. Pa. Jan. 29, 2025) ("the mere posting of allegedly defamatory statements online will not suffice, as explained in *Hasson*.") (quotations omitted); *Ingrao v. AddShoppers, Inc.*, 2024 WL 4892514, at *10 (E.D. Pa. Nov. 25, 2024) (software company does not expressly target Pennsylvania "simply by providing code for" a website accessible in the forum).

13

Plaintiffs next assert that, because they purportedly sent Quantarium notice of Daniel's Law, Quantarium engaged in "purposeful" conduct directed at New Jersey sufficient to establish specific jurisdiction. However, in *Hasson*, the Third Circuit found that "jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum," not on "the unilateral activity of a plaintiff." 114 F.4th at 196 (quoting *Walden*, 571 U.S. at 286). Plaintiffs' unilateral issuance of a takedown request referencing Daniel's Law does not establish express aiming towards the New Jersey forum by Quantarium. *See, e.g.*, *Pinninti v. NRI Med. Coll.*, 2010 WL 2483992, at *8 (D.N.J. Jun. 4, 2010) (finding a lack of minimum contacts where all of the actions taken by defendants that were "directed to the plaintiffs in New Jersey . . . were in response to actions of the plaintiffs and occurred in Michigan."); *Rodi v. S. New Eng. Sch. of Law*, 255 F. Supp. 2d 346, 350-51 (D.N.J. 2003); *Tocci v. Antioch Univ.*, 2007 WL 2362592, at *4 (D.N.J. Aug. 15, 2007).

Simply put, the conduct is going in the wrong direction. It is not that Quantarium directed some action at or into New Jersey, but that Plaintiffs directed their action from New Jersey to a resident of another state. Plaintiffs' very theory in the exact same context has been rejected by New Jersey's Appellate Division. *See Atlas Data Privacy Corp. v. LexisNexis Risk*, BER-L-000875-24 (Law Div. June 6, 2025) ("the allegations that the unlawful actions occurred in New Jersey are based

14

on the unilateral activities of the Plaintiffs") (emphasis added); *see also Burger King*, 471 U.S. at 475 ("a defendant will not be haled into a jurisdiction solely as a result of . . . unilateral activity of another party"). Nor does the fact that Quantarium utilizes Black Knight, an entity registered to do business in New Jersey, as one of its data brokers, lead to a contrary conclusion. *See LaSala*, 410 Fed. Appx. at 477; *Burger King*, 471 U.S. at 478-79.

The facts here demonstrate, even more so than in *Hasson*, that the *Calder* effects test would not allow for this Court to hold personal jurisdiction over Quantarium. Any relevant conduct originated only because Plaintiffs contacted Quantarium out of New Jersey and not because Quantarium directed any tortious activity toward the forum. Plaintiffs rely on non-binding authority that conflicts with controlling Third Circuit precedent and cannot support their claim for personal jurisdiction. As such, even assuming that the *Calder* effects test applied, Plaintiffs have failed to demonstrate that Quantarium "expressly aimed" any alleged tortious conduct at New Jersey, and cannot establish a basis for this Court to exercise personal jurisdiction over Quantarium.

## CONCLUSION

There is no evidence that Quantarium purposefully availed itself of New Jersey, and the Calder effects test does not apply because allegedly violating Daniel's Law is not an intentional tort. And, even if Calder did apply, Plaintiffs have

shown no expressly aimed tortious conduct.  Accordingly, for these reasons and those set forth more fully in the Motion, the Court should grant the instant Motion and dismiss Plaintiffs' claims against Quantarium for lack of personal jurisdiction, together with such other and further relief as this Honorable Court deems just, proper and equitable.

Dated: February 2, 2026                    Respectfully Submitted,

                                          GORDON REES SCULLY MANSUKHANI, LLP


                                          By:*/s/ Clair E. Wischusen*
                                              Clair E. Wischusen
                                              John T. Mills (*pro hac vice*)
                                              290 W. Mt. Pleasant Avenue, Suite 3310
                                              Livingston, New Jersey 07039
                                              Tel: (973) 549-2500
                                              Fax: (973) 377-1911
                                              Email: cwischusen@grsm.com
                                              Email: jtmills@grsm.com

                                              *Attorneys for Defendants Quantarium Alliance,*
                                              *LLC and Quantarium Group, LLC*